UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:26-CV-27608

JORDYN WEINER and
HOLISTIC HEALING LLC,

Plaintiffs,

vs.

SPRINGS SERVICES ORGANIZATION, LLC,
d/b/a SPRINGS REJUVENATION, AND
SPRINGS REJUVENATION, LLC,

Defendants.
_______________________________________/

**COMPLAINT**

Plaintiffs, Jordyn Weiner and Holistic Healing, LLC, sue Defendants, Springs Services Organization, LLC d/b/a Springs Rejuvenation and Springs Rejuvenation, LLC, as follows:

***Parties, Jurisdiction, and Venue***

1. **Plaintiff, Jordyn Weiner ("Ms. Weiner")**, is over 18 years old and is a *sui juris* resident of Miami-Dade County, Florida, where she has resided since in or about April 2026.

2. Ms. Weiner began working for Springs on or about March 15, 2023, as an "Appointment Setter," and was later promoted to "Closer," then "Closer Team Lead," and finally "Sales Director."

3. Ms. Weiner performed her work for Springs primarily remotely from Puerto Rico through early April 2026 and periodically worked in person at Springs' Miami office.

4. On April 9, 2026, Ms. Weiner relocated full-time to Miami, Florida, where she performed her work for Springs until her employment was terminated.

5. **Plaintiff, Holistic Healing LLC ("Holistic Healing")**, is a *sui juris* Puerto Rico limited liability company.

6. Charles Pereyra ("Dr. Pereyra") is a resident of Miami-Dade County, Florida, the founder, Chief Executive Officer, and owner of both Springs Services Organization, LLC d/b/a Springs Rejuvenation and Springs Rejuvenation, LLC, who ran the day-to-day operations of the corporate Defendants, set and approved the compensation paid to Defendants' workforce, including Plaintiff, and made the decision to terminate Plaintiff's employment.

7. **Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation ("Springs Services")**, is a *sui juris* Delaware limited liability company that conducted its for-profit regenerative medicine, hair restoration, and wellness clinic business under the name "Springs Rejuvenation" in Miami-Dade County, Florida, at all times material, including through the same Aventura office and clinic.

8. At all times material, Dr. Pereyra also acted on behalf of, and within the course and scope of, his employment and authority with Springs Services, and Springs Services ratified his conduct.

9. **Defendant, Springs Rejuvenation, LLC ("Springs Rejuvenation")**, is a *sui juris* Georgia limited liability company that conducted its for-profit regenerative medicine, hair restoration, and wellness clinic business in Miami-Dade County, Florida, at all times material, including through its flagship office and clinic located at 2820 N.E. 214th Street, Suite 801, Aventura, Florida 33180.

10. At all times material, Dr. Pereyra acted on behalf of and within the course and scope of his employment and authority with Springs Rejuvenation, and Springs Rejuvenation

ratified his conduct.

11. Springs Rejuvenation and Springs Services are referred to collectively in this Complaint as "Springs" or "Defendants."

12. This Court has original jurisdiction over Ms. Weiner's federal question claims pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3), and supplemental jurisdiction over Plaintiffs' related claims brought under Florida law pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same nucleus of operative facts and form part of the same case or controversy.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) because Defendants transact business and maintain offices and a clinic in this District, because Ms. Weiner was living and working for Defendants in this District when they terminated her employment, because Dr. Pereyra made the operational, compensation, and termination decisions at issue in this District, and because Defendants maintain the employment and payroll records relevant to this action in this District, where Ms. Weiner was to be paid.

14. Plaintiffs retained the undersigned counsel and agreed to pay a reasonable fee for all services rendered.

15. All conditions precedent were satisfied by Plaintiffs and/or waived by Defendants.

**Common Factual Allegations**

16. On November 18, 2024, Ms. Weiner executed a written Services Agreement, effective November 1, 2024, with Springs Services. (*See* Services Agreement, attached as Exhibit "A").

17. Holistic Healing is a single-member Puerto Rico limited liability company that Ms. Weiner formed so that Springs could pay her for her services, as Springs recommended.

18. Only Ms. Weiner worked for Holistic Healing LLC, which served only as a conduit through which Springs paid Ms. Weiner for the personal services she performed for Springs.

19. Page 1 of the Services Agreement identified the purpose as having Ms. Weiner provide "Professional Services" as the "Joints sales team's Closer Team Lead" for Springs Services. *Id.*

20. Ms. Weiner signed the Services Agreement in her individual capacity:

[PARTY NAME]
By: ____________________
Name: Jordyn Weiner
Title: ____________________
Date: 11/18/2024

*Id.*, at 9-10.

21. The Services Agreement required Ms. Weiner to comply with Springs' policies and programs "as required by the Contractor's assigned Manager" (§ 1.10); to follow Springs' sexual harassment, workplace violence, and workplace conduct policies and attend Springs' mandatory training sessions (Articles III–V); and to be paid "semi-monthly, in accordance with company's standard payroll practices, and subject to any deductions permitted or required under law" (§ VI.01(c)).

22. The Services Agreement also permitted Springs and/or Springs Services to terminate the relationship "at any time, with or without cause without a prior written notice," while requiring Ms. Weiner to give 60 days' notice (§ VII.02).

23. Ms. Weiner, along with the workers classified and paid as employees and those classified and paid as independent contractors, were required to comply with an Employee Handbook, which required, among other things, that she:

a. respond to communications within 10 minutes during working hours;

b. obtain her manager's approval of her meeting schedule;

c. meet "minimum hourly requirements as determined by their supervisors";

d. follow Springs' SOPs, training requirements, and operational procedures, as well as the "operational direction provided by supervisors, managers, or leadership";

e. comply with the dress code requirements; and

f. submit time-off requests through a designated Slack channel, subject to denial by management.

24. Ms. Weiner was required to work seven days a week, approximately 50 to 70 hours per week, and to remain responsive from approximately 6:30 a.m. until 10:00 p.m. or later.

25. Ms. Weiner was required to comply with a company-wide "Springs Rejuvenation Employee Handbook," which Human Resources representative Alyssa Stilwell posted to the company-wide "general" Slack channel — which had approximately 72 members — instructing everyone to review and acknowledge it because, in her words, "[o]ur team continues to grow and with a bunch of new employees joining, it's important that we all stay aligned on expectations, policies, and company standards."

**<u>COUNT I – SEX DISCRIMINATION IN VIOLATION OF TITLE VII</u>**
**(By Ms. Weiner Against All Defendants)**

Plaintiff, Jordyn Weiner, reincorporates and re-alleges paragraphs 1 through 25 as though set forth fully herein and further alleges as follows:

26. Ms. Weiner pursues this claim under Title VII of the Civil Rights Act of 1964, 42

U.S.C. §§ 2000e, et seq. ("Title VII") to address Defendants' violations of Title VII and the damages she suffered as a result.

27. Ms. Weiner sold only Springs' services, at the prices Springs set, to Springs' patients, using Springs' scripts, Springs' email account (jordyn@springsrejuvenation.com), Springs' Slack workspace, and Springs' Google Workspace.

28. Ms. Weiner made no capital investment in Springs' business, made a minimal capital investment to provide services for Springs, had no ability to hire her own workers or set her own prices, and worked for no one other than Springs.

29. Ms. Weiner's job duties included taking calls with Springs' prospective patients all day, selling Springs' stem cell, joint, and hair restoration treatments using the scripts and slide presentations Springs provided, training Springs' other closers and setters, and leading Springs' closing team.

30. Ms. Weiner's sales work was integral to, and the core of, Springs' business, and her relationship with Springs was continuous and of indefinite duration.

31. Springs encouraged, and in practice required, its "setters" and "closers" to form limited liability companies through which Springs would pay them, with Springs going so far as to bring in a tax consultant to meet with the "setters" and "closers" to explain the purported benefits of forming those entities.

32. Springs classified its sales "setters," "closers," and other workers as independent contractors, even though they were required to adhere to the same handbook, policies, supervision, and control.

33. Although Springs labeled Ms. Weiner an independent contractor and paid her

through Holistic Healing LLC, Ms. Weiner was an employee of Springs Rejuvenation and Springs Services:

a. Springs trained Ms. Weiner;

b. Springs required Ms. Weiner to undergo training sessions;

c. Springs provided Ms. Weiner with all clientele;

d. Springs required Ms. Weiner to sell its services;

e. Springs controlled the manner and means by which Ms. Weiner performed her work;

f. Springs controlled when Ms. Weiner worked and did not work; and

g. Ms. Weiner worked only for Springs.

34. The Springs Employee Handbook also provided for performance reviews, progressive discipline, and promotions and transfers, and it expressly addressed "Commission based employees" and "Closers" — Ms. Weiner's compensation structure and job title.

35. Dr. Pereyra wrote to Springs' entire workforce that the Handbook's time-off rules applied to all Springs workers: "A friendly reminder that for W-2 and 1099 a 30-day notice is required for ALL time off as per the employee handbook. All time off must be approved by both your manager and me."

36. Dr. Pereyra also directed Ms. Weiner's staffing and scheduling decisions. In a March 27, 2026 voice message, for example, he told Ms. Weiner he wanted to "sync up so I can talk to you with some of my expectations with you leading the team," complained that the team had "only two people on a Saturday and no one on a Sunday," and demanded to know "what your plan is to solve this because we need more people opening up weekend slots like now."

37. Springs treated Ms. Weiner as an employee. When Ms. Weiner questioned her pay on the day of her termination, Dr. Pereyra told her that "insubordination is something I have zero tolerance for" and that "you work for a company as do I." Springs' Vice President of Operations later described Ms. Weiner in writing as a "previous employee."

38. Defendants were, at all times material, the "employer" of Ms. Weiner, as the term is defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), because they, individually and/or as a single, integrated enterprise, were engaged in an industry affecting commerce.

39. Accordingly, Ms. Weiner was, at all times material, an "employee" of Defendants, as the term is defined by 42 U.S.C. § 2000e(f).

40. Title VII of the Civil Rights Act provides as follows:

> (a) Employer practices
>
> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

41. Ms. Weiner is a woman and, as such, is a member of a class of persons protected from discrimination in employment because of her sex.

42. Ms. Weiner possessed the skills, background, and qualifications necessary to perform the duties of her positions.

43. Ms. Weiner performed her work for Defendants satisfactorily, and she was in all respects a good employee of Defendants.

44. Ms. Weiner was a high performer throughout her time with Springs.

45. April 2026, the last full month before Springs terminated her employment, was the highest collection month in the preceding year under Ms. Weiner's leadership of the closing team.

46. Days before her termination, Dr. Pereyra publicly praised Ms. Weiner during a company-wide meeting for Springs' record sales performance.

47. Ms. Weiner never received a negative performance review, a write-up, or any discipline before Springs terminated her employment.

48. Defendants discriminated against Ms. Weiner by failing to treat her the same or similarly to her male counterparts because of her sex.

49. Dr. Pereyra treated women in leadership at Springs differently than men.

50. In or about March 2026, Springs' Chief Marketing Officer, Damon James, a man, called Springs' Vice President of Operations, Meagan Bryson, a woman, a "f***ing bitch" during a recorded Zoom meeting.

51. Springs did not terminate Mr. James's employment. Instead, Springs briefly suspended him and then allowed Mr. James to resume his role.

52. After Ms. Bryson and another female employee raised concerns about Mr. James's conduct, Dr. Pereyra told Mr. James that he had "set Meaghan and Andria straight" and that "they're gonna stop be[ing] bitches."

53. Armando Zamora, a man, worked for Springs as a closer, reported to Dr. Pereyra, and was classified and paid by Springs in the same manner as Ms. Weiner.

54. In May 2026, Mr. Zamora, like Ms. Weiner, complained that Springs had not paid him the compensation he was owed, and he refused to continue working or to attend a meeting until Springs paid him.

55. Rather than terminate Mr. Zamora, Springs paid him in full, retained him, and offered him a promotion to a leadership position.

56. On May 5, 2026, during an executive team video call attended by other members of Springs' leadership, Dr. Pereyra directed Ms. Weiner to lower her camera so that he could see the shirt she was wearing. Upon information and belief, Dr. Pereyra did not direct any male member of the leadership team to lower his camera so that Dr. Pereyra could see his clothing.

57. On Sunday, May 10, 2026, Dr. Pereyra called a last-minute meeting for 7:00 p.m. that evening.

58. Ms. Weiner informed Dr. Pereyra in writing that she would be happy to get on a call with him once Springs paid her team and her the compensation they were owed, noting that her pay had been reduced from approximately $27,000 to approximately $16,000 on the day of payroll and that the bonuses Dr. Pereyra had promised to pay on Friday, May 8, 2026, had not been paid.

59. In response, on May 11, 2026, Dr. Pereyra wrote to Ms. Weiner: "If you decided not to hop on a call or perform any of your duties today please consider this your formal termination from Springs Rejuvenation Effective Immediately." He added that he could not "have you refuse to take a meeting and to give ultimatums."

60. Springs terminated Ms. Weiner's employment effective May 11, 2026, disabled her access to Springs' Google Workspace account that same day — cutting off her access to her own payroll records — and directed her to transfer ownership of the sales team meeting to Dr. Pereyra.

61. Two days later, on May 13, 2026, Dr. Pereyra met with Ms. Weiner in person in Coral Gables, Florida. During that meeting, Dr. Pereyra acknowledged that terminating Ms. Weiner immediately was a mistake and that Ms. Weiner "should have at least gotten" the suspension that Mr. James received.

62. Springs terminated Ms. Weiner, a woman, for engaging in the very same conduct for which it paid, retained, and offered a promotion to Mr. Zamora, a man — and for conduct far less serious than the conduct for which it merely suspended Mr. James, a man.

63. Springs' stated reason for terminating Ms. Weiner's employment — that she refused to attend a meeting until she was paid — is a pretext for sex discrimination.

64. After Springs terminated her employment, Ms. Weiner remained unemployed until the end of September 2026 despite her diligent efforts to find comparable work.

65. Ultimately, Defendants terminated Ms. Weiner's employment for declining to attend a meeting until she was paid the compensation owed to her.

66. Defendants treated Ms. Weiner differently (worse) than their male employees by subjecting her to the adverse employment actions and materially adverse changes in the terms, conditions, and privileges of her employment, as set forth above, because of her sex.

67. Ms. Weiner's sex was a substantial or motivating factor in why Defendants treated her differently (worse) than their male employees.

68. The acts of sex-based discrimination complained of herein were not on account of any bona fide seniority, merit, or incentive system, or any factor other than Ms. Weiner's sex.

69. Defendants' differential treatment of Ms. Weiner, when considered individually or collectively, constitutes adverse employment actions and unlawful discrimination because of her sex in violation of Title VII of the Civil Rights Act.

70. These actions constitute an ultimate employment decision, altered the compensation, terms, conditions, or privileges of Ms. Weiner's employment, and/or adversely affected her status as an employee.

71. Defendants' actions were malicious and demonstrated a reckless indifference to Ms. Weiner's federally protected rights pursuant to Title VII of the Civil Rights Act.

72. The aforementioned acts of commission and omission by Defendants were done willfully, wantonly, and with reckless disregard for the consequences of such actions.

73. Ms. Weiner suffered and will continue to suffer damages as a direct and proximate result of Defendants' violations of Title VII, including:

a. economic damages, including lost past and future wages and benefits; loss of seniority rights; and out-of-pocket expenses for job searches, retraining, and/or other money paid due to Defendants' conduct in violation of Title VII, and other care and treatment resulting from Defendants' conduct;

b. noneconomic damages, including emotional distress, mental anguish, humiliation, loss of dignity, reputational harm, and other intangible damages; and

c. other compensatory damages as allowed by law.

74. Defendants' actions were knowing, intentional, willful, malicious, and in reckless disregard of Ms. Weiner's rights under Title VII, warranting the imposition of punitive damages.

75. Ms. Weiner timely filed a Charge of Discrimination against Springs Rejuvenation, LLC and Springs Services Organization, LLC (d/b/a Springs Rejuvenation) with the Equal

Employment Opportunity Commission ("EEOC"), Charge No. 515-2026-00461, on June 6, 2026, alleging discrimination because of her sex, and she requested that the Charge be filed with both the EEOC and the appropriate state agency, including the Florida Commission on Human Relations ("FCHR").

76. On July 30, 2026, the EEOC dismissed the Charge and issued Ms. Weiner a Notice of Right to Sue, and Ms. Weiner filed this Complaint within 90 days of her receipt of that Notice.

WHEREFORE Plaintiff, Jordyn Weiner, demands the entry of a judgment in her favor and against Defendants, Springs Rejuvenation, LLC and Springs Services Organization, LLC d/b/a Springs Rejuvenation, jointly and severally, after a trial by jury, declaring that Defendants violated Title VII; requiring that she be reinstated to the position she would have held, with all attendant lost wages, benefits, and seniority rights; awarding her compensatory damages, including for the loss of past and future wages, benefits, and seniority rights, and for mental anguish, loss of dignity, reputational damages, and other intangible injuries; awarding her punitive damages against Defendants; granting her a permanent injunction precluding Defendants from engaging in the discriminatory employment practices identified herein; and awarding her all interest allowed by law, her attorney's fees and costs, and such other and further relief as the Court deems just and proper.

**COUNT II – BREACH OF CONTRACT**
**(By Ms. Weiner Against Springs Services)**

Plaintiff, Jordyn Weiner, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 25 as though set forth fully herein and further alleges as follows:

77. Section VI.01(c) of the Services Agreement required Springs Services to pay Ms. Weiner "an initial monthly rate of $3,500 USD payable semi-monthly, in accordance with

company's standard payroll practices, and subject to any deductions permitted or required under law," plus a "10% commission of cash collected on a deal, payable once 50% of the deal's value is collected," plus "an extra 2% commission if your team meets key performance indicators (KPIs)." (Exhibit "A").

78. Section VIII.13 of the Services Agreement provides that "[a]ny amendments to this Agreement will be effective only if in writing and signed by the Facility and the Contractor." *Id.*

79. Ms. Weiner is the "Contractor" identified in the Services Agreement. The Services Agreement defines the Contractor as "Jordyn Weiner . . . an individual," Ms. Weiner executed the Services Agreement in her own name, the services the Services Agreement required were Ms. Weiner's personal services; and the compensation the Services Agreement promised was compensation for Ms. Weiner's work.

80. Ms. Weiner worked only for Holistic Healing LLC, which served only as a conduit through which Springs paid Ms. Weiner for the personal services she performed for Springs.

81. Dr. Pereyra offered Ms. Weiner the position of "Sales Director," which required her to perform additional duties and assume additional responsibilities for overseeing the closing team.

82. In exchange for taking on the role of Sales Director, Dr. Pereyra offered Ms. Weiner an additional 1% of the total collections and 3% of Springs' net operating income ("NOI") each month, in addition to the compensation set forth in the Services Agreement, payable on the 25th of the following month (the "Sales Director Compensation"), if she accepted the position.

83. Ms. Weiner accepted the offer, and on May 1, 2026, Springs Services promoted her to "Sales Director."

84. Ms. Weiner further agreed, and Dr. Pereyra confirmed in writing on Springs Services' behalf, that Springs Services would pay Ms. Weiner the Sales Director Compensation.

85. Ms. Weiner performed under the parties' contract(s)/agreement(s) by doing the work requested of her.

86. Springs Services initially paid Ms. Weiner the $3,500 monthly base compensation required by the Services Agreement for November and December 2024.

87. Beginning in January 2025, Springs Services stopped paying Ms. Weiner her $3,500 monthly base compensation, telling her that the company was not making enough money to pay it.

88. Ms. Weiner never agreed in a signed writing, as required by Section VIII.13 of the Services Agreement, to any reduction or elimination of her base compensation.

89. Nonetheless, as of February 2026, Springs Services paid Ms. Weiner only $2,000 per month toward her base compensation.

90. Springs Services also failed to pay Ms. Weiner all of the commissions she earned under the Services Agreement, including by reducing her pay when her commissions exceeded certain levels, in an amount to be determined.

91. When Ms. Weiner's supervisor submitted payroll for Ms. Weiner's April 2026 compensation, Ms. Weiner was to be paid approximately $27,000. On the day of payroll, without notice or explanation, Springs reduced that amount to approximately $16,000.

92. Dr. Pereyra promised Ms. Weiner that the reduction would be corrected by the end of the day on Friday, May 8, 2026, and that the bonuses owed to Ms. Weiner and her team would also be paid that day. Springs did neither.

93. On May 11, 2026, Dr. Pereyra confirmed to Ms. Weiner in writing that she would be paid on May 25, 2026 her 1% bonus on the approximately $711,000 in collections (approximately $7,111), plus 3% of Springs' April 2026 NOI, stating: "I have confirmed this already. I said this in the beginning of the day." He also told Ms. Weiner in writing, "I will still make sure you get your bonuses."

94. Springs Services' own payroll breakdown for the May 25, 2026 payroll run initially reflected Ms. Weiner's 1% Sales Director bonus of $7,114.85.

95. Springs Services then reduced that bonus to $0.00 under the heading "Updated payroll amount approved by CEO."

96. Springs Services likewise did not pay Ms. Weiner her 3% NOI bonus for April 2026. Although Springs' finance team communicated during a May 5, 2026 meeting that April 2026 NOI was projected to be approximately $130,000, Springs later asserted — without providing any calculation, despite Ms. Weiner's repeated written requests — that its April 2026 NOI was negative $265,422.

97. Dr. Pereyra gave inconsistent explanations for the payroll "errors" to different people, blaming the Chief Financial Officer in a video posted to the team, blaming the Financial Controller when speaking to Ms. Weiner, and telling other team members the errors were caused by Ms. Weiner's supervisor.

98. Springs Services failed and refused to perform its obligations to timely pay Ms. Weiner the compensation it agreed to pay her, thereby materially breaching the parties' contract(s)/agreement(s), by:

a. failing to pay the $3,500 monthly base compensation from January 2025 through May 11, 2026, except for partial payments;

b. failing to pay all of the commissions Ms. Weiner earned;

c. reducing the April 2026 compensation from approximately $27,000 to approximately $16,000; and

d. failing to pay the 1% Sales Director bonus of $7,114.85 and the 3% NOI bonus for April 2026.

99. Springs Services breached its contract with Ms. Weiner by failing to pay her approximately $56,000 in base compensation required by the Services Agreement for services performed from January 2025 through May 11, 2026.

100. Ms. Weiner has been damaged as a direct and proximate result of the breach(es) of her contract(s)/agreement(s) with Springs Services in the total aggregate amount of $56,000, as set forth above.

WHEREFORE Plaintiff, Jordyn Weiner, demands the entry of judgment in her favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for all breach of contract damages suffered, pre-judgment and post-judgment interest, costs and attorney's fees incurred in this matter pursuant to Fla. Stat. § 448.08, and for such other and further relief as this Court deems just and proper.

**COUNT III – BREACH OF CONTRACT**
**(By Holistic Healing Against Springs Services)**

Plaintiff, Holistic Healing, LLC, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 25 as though set forth fully herein and further alleges as follows:

101. Section VI.01(c) of the Services Agreement required Springs Services to pay Holistic Healing "an initial monthly rate of $3,500 USD payable semi-monthly, in accordance with company's standard payroll practices, and subject to any deductions permitted or required under law," plus a "10% commission of cash collected on a deal, payable once 50% of the deal's

value is collected," plus "an extra 2% commission if your team meets key performance indicators (KPIs)." (Exhibit "A").

102. Section VIII.13 of the Services Agreement provides that "[a]ny amendments to this Agreement will be effective only if in writing and signed by the Facility and the Contractor." *Id.*

103. Holistic Healing is the "Contractor" identified in the Services Agreement. The Services Agreement defines the Contractor as "Jordyn Weiner . . . an individual," Ms. Weiner executed the Services Agreement for Holistic Healing; and the compensation the Services Agreement promised was compensation for Holistic Healing's work.

104. In exchange for Ms. Weiner taking on the role of Sales Director, Dr. Pereyra offered to pay an additional 1% of the total collections and 3% of Springs' net operating income ("NOI") each month, in addition to the compensation set forth in the Services Agreement, payable on the 25th of the following month (the "Sales Director Compensation"), if she accepted the position.

105. Ms. Weiner accepted the offer on behalf of Holistic Healing, and on May 1, 2026, Springs Services promoted her to "Sales Director."

106. Ms. Weiner further agreed, and Dr. Pereyra confirmed in writing on Springs Services' behalf, that Springs Services would pay the Sales Director Compensation.

107. Ms. Weiner performed under the parties' contract(s)/agreement(s) by doing the work requested of her through Holistic Healing.

108. Springs Services initially paid Ms. Weiner the $3,500 monthly base compensation required by the Services Agreement for November and December 2024 to Holistic Healing.

109. Beginning in January 2025, Springs Services stopped paying Holistic Healing the $3,500 monthly base compensation owed, telling Ms. Weiner that Springs Services was not making enough money to pay it.

110. Ms. Weiner never agreed in a signed writing, as required by Section VIII.13 of the Services Agreement, to any reduction or elimination of the base compensation Holistic Healing was entitled to be paid under the Services Agreement.

111. Nonetheless, as of February 2026, Springs Services paid Holistic Healing only $2,000 per month toward the base compensation.

112. Springs Services also failed to pay Holistic Healing all of the commissions Ms. Weiner earned under the Services Agreement, including by reducing the amount it paid to Holistic Healing when her commissions exceeded certain levels, in an amount to be determined.

113. When Ms. Weiner's supervisor submitted payroll for Ms. Weiner's April 2026 compensation, Holistic Healing was to be paid approximately $27,000. On the day of payroll, without notice or explanation, Springs reduced that amount to approximately $16,000.

114. Dr. Pereyra promised Ms. Weiner that the reduction would be corrected by the end of the day on Friday, May 8, 2026, and that the bonuses owed to Ms. Weiner and her team would also be paid that day. Springs did neither.

115. On May 11, 2026, Dr. Pereyra confirmed to Ms. Weiner in writing that she would be paid on May 25, 2026, her 1% bonus on the approximately $711,000 in collections (approximately $7,111), plus 3% of Springs' April 2026 NOI, stating: "I have confirmed this already. I said this in the beginning of the day." He also told Ms. Weiner in writing, "I will still make sure you get your bonuses."

116. Springs Services' own payroll breakdown for the May 25, 2026 payroll run initially reflected Ms. Weiner's 1% Sales Director bonus of $7,114.85 to be paid to Holistic Healing.

117. Springs Services then reduced that bonus to $0.00 under the heading "Updated payroll amount approved by CEO."

118. Springs Services likewise did not pay Holistic Healing the 3% NOI bonus for Ms. Weiner for April 2026. Although Springs' finance team communicated during a May 5, 2026 meeting that April 2026 NOI was projected to be approximately $130,000, Springs later asserted — without providing any calculation, despite Ms. Weiner's repeated written requests — that its April 2026 NOI was negative $265,422.

119. Dr. Pereyra gave inconsistent explanations for the payroll "errors" to different people, blaming the Chief Financial Officer in a video posted to the team, blaming the Financial Controller when speaking to Ms. Weiner, and telling other team members the errors were caused by Ms. Weiner's supervisor.

120. Springs Services failed and refused to perform its obligations to timely pay Holistic Healing the compensation it agreed to pay, thereby materially breaching the parties' contract(s)/agreement(s), by:

a. failing to pay the $3,500 monthly base compensation from January 2025 through May 11, 2026, except for partial payments;

b. failing to pay all of the commissions Ms. Weiner earned;

c. reducing the April 2026 compensation from approximately $27,000 to approximately $16,000; and

d. failing to pay the 1% Sales Director bonus of $7,114.85 and the 3% NOI bonus for April 2026.

121. Springs Services breached its contract with Holistic Healing by failing to pay it approximately $56,000 in base compensation required by the Services Agreement for services performed from January 2025 through May 11, 2026.

122. Holistic Healing has been damaged as a direct and proximate result of the breach(es) of its contract(s)/agreement(s) with Springs Services, as set forth above.

WHEREFORE Plaintiff, Holistic Healing, LLC, demands the entry of judgment in its favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for all breach of contract damages suffered, pre-judgment and post-judgment interest, costs and attorney's fees incurred in this matter, and for such other and further relief as this Court deems just and proper.

**COUNT IV – QUANTUM MERUIT**
**(By Ms. Weiner Against Springs Services)**

Plaintiff, Jordyn Weiner, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 15 as though set forth fully herein and further alleges as follows:

123. Ms. Weiner provided labor and services to Springs Services, at its request, from November 2024 through May 11, 2026, by selling Defendants' treatments to their patients, training Defendants' closers and setters, leading Defendants' closing team, and serving as Defendants' Sales Director.

124. Ms. Weiner's labor and services conferred a substantial benefit on Springs Services, including resulting in approximately $711,000 collected in April 2026 under her leadership of the closing team.

125. Springs Services had knowledge of, requested, received, and accepted the benefits of the labor and services Ms. Weiner provided.

126. Ms. Weiner provided her labor and services to Springs Services under circumstances in which she reasonably expected to be paid, and in which Springs Services knew she expected to be reasonably compensated.

127. Springs Services failed and refused to pay Ms. Weiner the reasonable value of the labor and services she provided for the work she performed.

128. Under these circumstances, it would be inequitable and unjust for Springs Services to retain the benefit of Ms. Weiner's labor and services without paying her a reasonable value for the work she performed.

WHEREFORE Plaintiff, Jordyn Weiner, demands the entry of judgment in her favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for damages equal to the reasonable value of the labor and services she provided, plus pre-judgment and post-judgment interest, costs and attorney's fees incurred in this matter pursuant to Fla. Stat. § 448.08, and for such other and further relief as this Court deems just and proper.

**COUNT V – QUANTUM MERUIT**
**(By Holistic Healing Against Springs Services)**

Plaintiff, Holistic Healing, LLC, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 15 as though set forth fully herein and further alleges as follows:

129. Holistic Healing provided labor and services to Springs Services, at its request, from November 2024 through May 11, 2026, by selling Defendants' treatments to their patients, training Defendants' closers and setters, leading Defendants' closing team, and serving as Defendants' Sales Director.

130. Holistic Healing's labor and services conferred a substantial benefit on Springs Services, including resulting in approximately $711,000 collected in April 2026 under Ms. Weiner's leadership of the closing team.

131. Springs Services had knowledge of, requested, received, and accepted the benefits of the labor and services Ms. Weiner provided through Holistic Healing.

132. Ms. Weiner provided her labor and services to Springs Services through Holistic Healing under circumstances in which Holistic Healing reasonably expected to be paid, and in which Springs Services knew Holistic Healing expected to be reasonably compensated.

133. Springs Services failed and refused to pay Holistic Healing the reasonable value of the labor and services it provided for the work Ms. Weiner performed.

134. Under these circumstances, it would be inequitable and unjust for Springs Services to retain the benefit of the labor and services Holistic Healing provided through Ms. Weiner without paying Holistic Healing a reasonable value for the work performed.

WHEREFORE Plaintiff, Holistic Healing, LLC, demands the entry of judgment in its favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for damages equal to the reasonable value of the labor and services provided, plus pre-judgment and post-judgment interest, costs, and for such other and further relief as this Court deems just and proper.

**<u>COUNT VI – PROMISSORY ESTOPPEL</u>**
**(By Ms. Weiner Against Springs Services)**

Plaintiff, Jordyn Weiner, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 15 as though set forth fully herein and further alleges as follows:

135. Springs Services, by and through Dr. Pereyra, made clear and definite promises to Ms. Weiner, intending to induce her to work, perform, provide services, to continue provide services, and to provide additional services, by engaging in the following:

a. Promising to pay a base compensation of $3,500 per month, payable semi-monthly, plus commissions of 10% of the money collected on Ms. Weiner's deals and an additional 2% when her team met its key performance indicators;

b. Promising to pay Ms. Weiner, in exchange for leading Springs Services' closing team and serving as Sales Director, 1% of total amount collected and 3% of NOI each month;

c. Promising to correct the reduction of Ms. Weiner's April 2026 compensation from approximately $27,000 to approximately $16,000 and to pay the bonuses owed to Ms. Weiner by the end of the day on Friday, May 8, 2026; and

d. Promising in writing on May 11, 2026, to pay Ms. Weiner her 1% bonus on the approximately $711,000 in collections during April 2026 (approximately $7,111) and her 3% NOI bonus for April 2026 on May 25, 2026 — "I have confirmed this already" — and to "make sure you get your bonuses."

136. Springs Services reasonably should have expected that these promises would induce Ms. Weiner to continue working for them, to work 50 to 70 hours per week, seven days per week, to lead its closing team and serve as its Sales Director, and to forgo other employment opportunities.

137. Ms. Weiner reasonably relied on Springs Services' promises to her detriment by, among other things, continuing to work for Defendants for more than a year after they stopped paying her full base compensation, assuming leadership of its closing team and the responsibilities of Sales Director, generating record collections for Defendants in April 2026, and forgoing other employment opportunities.

138. Ms. Weiner reasonably relied on Springs Services' promises because they were made by Dr. Pereyra, who owned and controlled Springs Services, approved payroll, confirmed several of those promises in writing, and professed to be wealthy and able to pay her.

139. Ultimately, Springs Services failed and refused to perform on its promise(s) to pay Ms. Weiner, as aforesaid.

140. Injustice can be avoided only by enforcing the promises Springs Services made, as identified above.

141. Ms. Weiner has been damaged as a direct and proximate result of her reliance on the promises Springs Services made and its failure to honor/perform them.

WHEREFORE Plaintiff, Jordyn Weiner, demands the entry of judgment in her favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for damages in the amount of the compensation it promised to pay her, plus pre-judgment and post-judgment interest, costs and attorney's fees incurred in this matter pursuant to Fla. Stat. § 448.08, and for such other and further relief as this Court deems just and proper.

**COUNT VII – PROMISSORY ESTOPPEL**
**(By Holistic Healing Against Springs Services)**

Plaintiff, Holistic Healing, LLC, reincorporates and re-alleges paragraphs 1 through 8 and 12 through 15 as though set forth fully herein and further alleges as follows:

142. Springs Services, by and through Dr. Pereyra, made clear and definite promises to Ms. Weiner, intending to induce Holistic Healing to work, perform, provide services, to continue provide services, and to provide additional services, by engaging in the following:

a. Promising to pay a base compensation of $3,500 per month, payable semi-monthly, plus commissions of 10% of the money collected on Ms. Weiner's deals and an additional 2% when her team met its key performance indicators;

b. Promising to pay 1% of total amount collected and 3% of NOI each month in exchange for Ms. Weiner leading Springs Services' closing team and serving as Sales Director;

c. Promising to correct the reduction of the April 2026 compensation from approximately $27,000 to approximately $16,000 and to pay the bonuses owed by the end of the day on Friday, May 8, 2026; and

d. Promising in writing on May 11, 2026, to pay the 1% bonus on the approximately $711,000 in collections during April 2026 (approximately $7,111) and the 3% NOI bonus for April 2026 on May 25, 2026 — "I have confirmed this already" — and to "make sure you get your bonuses."

143. Springs Services reasonably should have expected that these promises would induce Holistic Healing to continue to have Ms. Weiner provide services for it, to work 50 to 70 hours per week, seven days per week, to lead its closing team and serve as its Sales Director, and to forgo other work opportunities.

144. Holistic Healing reasonably relied on Springs Services' promises to its detriment by, among other things, continuing to work for Springs Services for more than a year after it stopped paying the full base compensation, having Ms. Weiner assume leadership of Springs Services' closing team and the responsibilities of Sales Director, generating record collections for Springs Services in April 2026, and forgoing other work opportunities.

145. Holistic Healing reasonably relied on Springs Services' promises because they were made by Dr. Pereyra, who owned and controlled Springs Services, approved payroll, confirmed several of those promises in writing, and professed to be wealthy and able to pay it.

146. Ultimately, Springs Services failed and refused to perform on its promise(s) to pay Holistic Healing, as aforesaid.

147. Injustice can be avoided only by enforcing the promises Springs Services made, as identified above.

148. Holistic Healing has been damaged as a direct and proximate result of its reliance on the promises Springs Services made and its failure to honor/perform them.

WHEREFORE Plaintiff, Holistic Healing, LLC, demands the entry of judgment in its favor and against Defendant, Springs Services Organization, LLC d/b/a Springs Rejuvenation, after trial by jury, for damages in the amount of the compensation it promised to pay, plus pre-judgment and post-judgment interest, costs and attorney's fees incurred in this matter, and for such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, Jordyn Weiner and Holistic Healing, LLC, demand a trial by jury of all issues so triable.

Respectfully submitted this 27th day of October 2026,

s/ Brian H. Pollock, Esq.
Brian H. Pollock, Esq.
Florida Bar No. 174742
brian@fairlawattorney.com
FAIRLAW FIRM
135 San Lorenzo Avenue, Suite 770
Coral Gables, Florida 33146
Telephone: (305) 230-4884
*Counsel for Plaintiffs*